UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL L. WILSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ENGS and LYCH,<br><br>　　　　Defendants. | CAUSE NO. 3:19-CV-1138-JD-MGG |

OPINION AND ORDER

Michael L. Wilson, a prisoner without a lawyer, is proceeding in this case "against Sgt. [Eng] and Officer [Lynch][1] in their individual capacities for compensatory damages for his claim of denying him medical treatment for his chest pain, shortness of breath, and head injury on October 27, 2019, in violation of the Eighth Amendment[.]" ECF 6 at 2. Wilson filed a motion for summary judgment. ECF 46. The defendants filed a response and cross motion for summary judgment. ECF 47. Wilson filed a response to the defendants' cross motion for summary judgment. ECF 53. Neither party filed a reply and the time for doing so has passed. The summary judgment motions are now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a

---

[1] Improperly captioned as "Engs" and "Lych" in the complaint.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

   I.   FACTS

Around 2:40 a.m. on October 27, 2019, Wilson woke up with chest pains and shortness of breath. ECF 1 at 2. Wilson complained about the chest pain to Correctional Officer Jaren Lynch and asked if he could go to medical. *Id.*; ECF 49-1 at 2. Officer Lynch responded that she would tell Correctional Sergeant Adam Eng to call medical as soon as possible. ECF 1 at 2. Officer Lynch immediately reported Wilson's complaints to Sgt. Eng. ECF 49-1 at 2. However, immediately after Officer Lynch reported Wilson's complaints to Sgt. Eng, both officers were required to leave the area to attend to a medical emergency with another offender. *Id.* Minutes later, Wilson passed out in his

2

cell and struck his head on the cell bars. ECF 1 at 2. When he awoke, Sgt. Eng and other officers were at his cell door and saw him get up from the floor. *Id.* Sgt. Eng moved Wilson into a holding cell, and Wilson was eventually transported to medical and examined by a nurse around 6:30 a.m. *Id.*; ECF 49-2 at 3.[2]

Wilson's medical records show that when a nurse first examined him around 6:30 a.m., she found he was "independent" and had a "strong" and "steady" gait. ECF 49-2 at 3. He exhibited no signs or symptoms of distress or cardiac issues. *Id.* at 2-3. His heart rate was "normal and steady." *Id.* He had a "superficial abrasion" on the top of his head, which was pink with no active bleeding. *Id.* at 3. The nurse cleaned the area and instructed Wilson to clean the abrasion daily and apply ointment. *Id.* The nurse gave Wilson aspirin for his chest pain and explained that it would assist with his other discomfort. *Id.* at 2. The nurse then released Wilson back to his cell in stable condition and instructed him to return to the nursing station if he started feeling bad. *Id.* at 3.

Wilson returned to the nurse's station the next day for complaints regarding his head injury. *Id.* at 4. An examination showed a "superficial injury to skin" with no active bleeding or signs of infection. *Id.* at 5. The nurse cleaned the wound and applied a Band-Aid before returning Wilson to his cell in stable condition. *Id.* Several weeks later,

---

[2] Wilson asserts there is no evidence the delay in transporting him to medical was caused by a medical emergency with another offender. ECF 53 at 3-4. However, Wilson offers no evidence the delay was not caused by a medical emergency, so this dispute is not genuine. Regardless, even if this dispute were genuine, it is only material if the court determines the delay caused Wilson harm. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (holding that the defendants' subjective motive behind the delay was irrelevant where the delay was not sufficiently serious to violate the defendants' Eighth Amendment rights).

Wilson returned to the nurse's station with complaints of chest pain. *Id.* at 6. An examination found a regular heart rate and normal heart sounds. *Id.* at 7-8. Wilson was returned to housing in stable condition. *Id.* at 8. Wilson returned to the nurse's station three days later with complaints of chest pain. *Id.* at 10. His heart rate and heart sounds were again found to be normal and he was returned to his cell in good condition. *Id.* at 11-12. Wilson returned to the nurse's station four days later with complaints of chest pain. *Id.* at 13. He was returned to his cell in stable condition after an examination found his vital signs to be normal. *Id.* at 13-14. Wilson does not dispute the validity of his medical records, and the court accepts them as undisputed.

## II.     ANALYSIS

Wilson argues Officer Lynch and Sgt. Eng acted with deliberate indifference to his head injury by placing him in a holding cell and making him wait three-and-a-half hours before transporting him to the nurse's station after he passed out and struck his head. ECF 46. The defendants argue the undisputed evidence shows the three-and-a-half-hour delay was inconsequential to Wilson's health and did not cause any injury. ECF 48. Wilson responds the three-and-a-half-hour delay was consequential to his health because it exacerbated his head injury and unnecessarily prolonged his pain. ECF 53 at 4-9.

To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) Where, as here, a plaintiff alleges a delay in providing medical care, the plaintiff must also

4

produce "verifying medical evidence" that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"). Thus, an "action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *see also Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm").

Here, Wilson has not provided any verifying medical evidence that the three-and-a-half-hour delay caused his condition to worsen or had any detrimental effect. *See Langston*, 100 F.3d at 1240-41; *Knight*, 590 F.3d at 466. Specifically, it is undisputed that, when Wilson was first examined by the nurse around 6:30 a.m., the nurse found he was independent, had a strong and steady gait, showed no signs or symptoms of distress, had a normal heart rate, and presented with only a superficial abrasion to the top of his head with some pinkness but no open wound and no bleeding. *See* ECF 49-2 at 2-3. The nurse treated the abrasion by washing the area and instructing Wilson to wash and apply ointment to the area daily. *Id.* at 3. Follow-up appointments over the next few weeks continued to indicate Wilson was healthy. *Id.* at 4-14. Wilson offers no medical evidence to support his assertion that the three-and-a-half-hour delay exacerbated his head injury. *See Williams,* 491 F.3d at 714-15. Moreover,

5

pain treatable with aspirin is *de minimis* and any additional minimal pain for a few hours does not rise to the level of a constitutional violation. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (holding that "[t]here is . . . a *de minimis* level of imposition with which the Constitution is not concerned"); *see also Langston*, 100 F.3d at 1240 ("We have held in the past that a two-hour delay is not an unreasonably long wait for an x-ray, an examination, and possibly a set of a fracture," as "the public often waits longer at hospital emergency rooms"); *Knight*, 590 F.3d at 466 (a two-and-a-half-hour delay for a non-life-threatening shoulder injury was minimal and had no adverse consequences). Accordingly, because there is no medical evidence that the three-and-a-half hour delay had a detrimental effect on Wilson, no reasonable jury could find the defendants' conduct amounted to a constitutional violation.[3] *See Langston*, 100 F.3d at 1240-41. Summary judgment is thus warranted in favor of the defendants. *See Anderson*, 477 U.S. at 248.

For these reasons, the court:

(1) DENIES Michael Wilson's motion for summary judgment (ECF 46);

(2) GRANTS the defendants' cross motion for summary judgment (ECF 47); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Michael Wilson.

SO ORDERED on July 22, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Because the court finds the three-and-a-half hour delay did not rise to the level of a constitutional violation, any dispute regarding the cause of the delay is immaterial.

6